**SINCLAIR REFINING CO. v. BENNETT.**

No. 8700.

Circuit Court of Appeals, Sixth Circuit.

Nov. 11, 1941.

John F. Green, of Winchester, Tenn. (Lynch, Lynch & Lynch and Haynes & Green, all of Winchester, Tenn., on the brief), for appellant.

Jeff D. Fults, of Tracy City, Tenn., for appellee.

Before HICKS, MARTIN, and McALLISTER, Circuit Judges.

HICKS, Circuit Judge.

On October 6, 1937, appellee instituted this action against appellant in the Circuit Court of Grundy County, Tennessee, for damages allegedly arising from the pollution of two wells on her property by gasoline escaping from nearby tanks of appellant. The cause was removed to the District Court and a trial there resulted in a verdict for $2,000.

The questions presented are, whether the action was barred by the statute of limitations; whether the evidence supports the verdict; whether the damages were excessive; whether the court erred in allowing appellee to amend her declaration after her evidence was in; and whether it erred in commenting upon certain testimony.

We think the evidence supports the verdict and that the denial of appellant's motion for peremptory instructions was correct.

The evidence establishes that in 1934 appellee owned about an acre and three-fourths of land in Monteagle, Grundy County, Tennessee, upon which stood an eight-room house in which she lived; that the house was centrally located and was accommodated by two wells, a bored well under the kitchen, about 45 feet deep, used for drinking purposes, and a dug well about 16 feet deep, located just off the porch, and used for other purposes.

In the fall of 1934, possibly early in October, appellee found gasoline in both wells in such quantities as to render them unusable and despite numerous cleanings, traces of gasoline continued to be found in the wells up to the date of the trial in August, 1939, and they have remained useless for drinking, cooking and other purposes, except the roughest needs. Appellee has been compelled to use a neighbor's well. The pollution was so complete in 1934 that 60 gallons of pure gasoline were drawn from the deeper well.

The Log Cabin filling station, selling Sinclair gasoline and in charge of one Geymont, was located about 325 feet from appellee's property near the top of a ridge. Appellee's home was about 8 or 10 feet lower than the filling station and there was downhill slope from the station to the house so that drainage from the station "couldn't go any other way."

For two or three months preceding appellee's discovery of gasoline in her wells, Geymont had been missing gasoline. He suspected that the tanks were leaking and wrote appellant about it, and, upon the discovery of gasoline in the wells he dug down beneath the surface of the earth to the tanks and found gasoline streaming out of a union between a tank and an overflow pipe. He found the adjacent ground soaked with gasoline and he estimated a loss of 10 gallons per day for the three preceding months. On October 31, 1934, he wrote a letter to appellant complaining of faulty installation of the pumps and thereafter estimated the loss of gasoline to be 12 gallons a day over a period of 16 months.

On April 18, 1933, appellant leased the premises occupied by the filling station from Geymont for two years, from March 29, 1934, for a stipulated rental, or, at Geymont's option, at the rate of one cent a gallon for gasoline sold. Geymont operated the station and was compensated by the

profit on the gasoline he distributed. When appellant leased the premises it put in new tanks and pumps and changed the pipes. In installing the tanks it simply dug a hole and put the tanks in and covered them with dirt, rocks, gravel and cinders. After the discovery of the leaks Geymont tightened the joints and notified appellant's truck driver and in about two weeks appellant's maintenance man came and made repairs.

We think the evidence supports a substantial inference that the tanks belonged to appellant and were under its supervision, maintenance and control and that leakage therefrom flowed inevitably into appellee's wells, and we think a fair construction of appellee's declaration alleges a cause of action for the resultant damages.

■ Appellee alleged that the discovery of the gasoline in the wells, which the court rightly ruled fixed the date of the accrual of the cause of action, had occurred "in the latter part of October 1934 or the first part of November of that year." But the evidence revealed that the discovery had been made a week or so before October 6, 1934, and since this law suit was not instituted until October 6, 1937, or more than three years later, other questions out of the way, it was barred by Sec. 8598 of the Tennessee Code 1932.

However, appellee's attorney testified that some time after March 16, 1936, he "brought suit in the Circuit Court at Tracy City, and had service on an agent in Grundy County, as he understood, who was an agent of the Company. Later it turned out that he was not an agent in the sense where the statute would justify the service of process. Then, when that suit was dismissed for that reason, I brought this suit." Further as we read the record, it contains a tacit admission upon the part of appellant's counsel that suit had been brought in the Grundy County Circuit Court and had been dismissed on a plea in abatement. The record indicates that the first suit was dismissed in March 1937 and nothing appears to the contrary. As the second suit was instituted on October 6, 1937, the court was not in error in holding as a matter of law that the suit was timely because of Sec. 8572 of the Code of Tennessee 1932, which provides that a second suit might be brought within one year after the dismissal of the first upon a ground not concluding plaintiff's right of action.

■ Appellant does not seriously question appellee's contention that the first suit was dismissed and the second instituted within a year thereafter, but makes the point that this was not shown by the best evidence. It is of course true that the proper way to have shown it was by certified copies taken from the record of the State Circuit Court; but the fact is so obviously true that we cannot say that any substantial right of appellant was prejudiced by the manner in which it was proved.

■ Appellant makes the point that there was never a first suit because the summons was not served upon its proper agent. This is not correct. In Tennessee (Sec. 8571 of Williams Tennessee Code) the suing out of a summons, not the execution of it, is the commencement of an action. See also Bryant v. Mulder, 163 Tenn. 600, 45 S. W.2d 48.

■ At the close of the evidence, and over the objection of appellant, appellee obtained leave to amend her declaration so as to allege that the suit in the Grundy County Circuit Court had been filed on December 9, 1936, against the same defendant, Sinclair Refining Company, based upon the same facts and circumstances as the present suit and for the same cause of action, and that a plea in abatement was filed because service was not on an agent of defendant, which was sustained by the court on March 9, 1937 and the suit dismissed. The purpose of this amendment was, of course, to conform the declaration to appellee's view of the evidence as it affected the plea of the statute of limitations. We think the amendment was properly allowed in the interest of justice. See Rule 15(b) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

It is urged that the court invaded the province of the jury by expressing an opinion upon certain features of the testimony. We find no prejudicial error in this regard. Appellant introduced no testimony and the evidence as a whole was uncontradicted. It would have supported a directed verdict for appellee. Moreover, the court instructed the jury that they were the exclusive judges of the facts and were not in any way bound by his opinion. It did not go beyond the well recognized limits of the judicial function.

■ Error is assigned upon the charge of the court as to the measure of damages. The court charged that the measure of damages was the difference in the value of the real estate before the wells were polluted by the gasoline and the value thereafter. In

view of the uncontradicted testimony that known gasoline-contaminated wells had not cleared for many years and that appellee's own wells had not cleared of gasoline odor after five or six years, we think the injury, if not absolutely permanent, was irremediable except after the lapse of an unpredictable period of time and that therefore the instruction on the measure of damages was not erroneous. Moreover, this instruction was not excepted to at the close of the charge.

Finally, it is said that the verdict was so excessive as to indicate passion, prejudice or caprice upon the part of the jury. This question is not reviewable here. It was a question for the District Court upon a motion for a new trial. The granting or denial thereof was in the sound discretion of the court and is not reviewable except for a clear abuse thereof.

We find no reversible error upon the record and the judgment appealed from is therefore affirmed.